# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

JONES CREEK INVESTORS, LLC and
SAVANNAH RIVERKEEPER, INC.,

    Plaintiffs,

    v.                                         CV 111-174

COLUMBIA COUNTY, GEORGIA, and
CSX TRANSPORTATION, INC.

    Defendants.

## ORDER

In its March 31, 2015, Order, this Court granted in part Defendant Columbia County's motion for summary judgment, and granted in its entirety Defendant CSX Transportation's motion for summary judgment. See Dkt. No. 493. Plaintiff Jones Creek Investors, LLC ("JCI") has filed a Motion for Reconsideration (Dkt. No. 498) and, alternatively, a Motion to Stay the Proceedings (Dkt. No. 499). For the reasons discussed below, both Motions are **DENIED**.

## BACKGROUND

Plaintiffs JCI and Savannah Riverkeeper, Inc. sued Defendants Columbia County, Ga ("Columbia County") and CSX Transportation, Inc. ("CSXT"), alleging that the Defendants' upstream construction and development projects caused sediment

to accumulate in the Savannah River and JCI's irrigation pond for its golf course. The facts, claims, and procedural history are chronicled in the Court's March 31, 2015, Summary Judgment Order. See Dkt. No. 493 ("Order").

The Order granted summary judgment to both Defendants on Plaintiffs' Clean Water Act ("CWA") claims, 33 U.S.C. § 1251 et seq., because Plaintiffs failed to produce evidence from which a jury could find that the waters in question were "waters of the United States" within the scope of the CWA. Order at pp. 66-67. In addition, the Order granted summary judgment on Plaintiff JCI's state-law claims against Defendant CSXT because the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101 et seq., preempts those claims. Order at pp. 32-33. The Order also granted summary judgment on Plaintiff JCI's federal takings claim against CSXT because Plaintiff failed to show that CSXT was a "state actor" for purposes of that claim. Order at p. 37.

In response to the Order, Plaintiff JCI has filed a Motion for Reconsideration (Dkt. No. 498) and, alternatively, a Motion to Stay the Proceedings (Dkt. No. 499).[1] The Motion for Reconsideration asks the Court to revise its summary judgment Order in light of the Environmental Protection Agencies' ("EPA") new rule which clarifies and broadens the definition of "waters

---

[1] Plaintiff Savannah Riverkeeper does not join JCI in its motions, and JCI alone will be referred to as "Plaintiff" for the remainder of this Order.

AO 72A
(Rev. 8/82)

of the United States" for purposes of the CWA. Dkt. No. 498, p. 2. The Motion for Reconsideration also asks the Court to consider a theory as to why CSXT is a state actor that Plaintiff failed to argue in its summary judgment briefing. See id. at p. 9.

The EPA's "New Rule" that Plaintiff wants the Court to apply in this case was published in the Federal Register on June 29, 2015. Clean Water Rule: Definition of "Waters of the United States", 80 Fed. Reg. 37,054-01 (Jun. 29, 2015) (relevant portions to be codified at 40 C.F.R. pts. 110 & 232). The rule became effective on August 28, 2015. Id. When Plaintiff filed its Motion to Stay on June 15, 2015, Plaintiff requested that the Court stay the proceedings until after the New Rule becomes effective, "should the Court deem that the appropriate course." Dkt. No. 499, p. 2.

Plaintiff briefed its arguments in its respective motions, dkt. nos. 498, 499, and responded to Defendants' arguments. Dkt. Nos. 506, 507, 508, 514, 515. Plaintiff also notified the Court when the New Rule was published in the Federal Register. Dkt. No. 502. For their part, defendants Columbia County and CSXT responded to both of Plaintiff's motions. Dkt. Nos. 500, 501, 509, 511. On November 9, 2015, the Court held a hearing in Augusta, Georgia to address the pending Motions. Dkt. No. 521. Both Motions are now ripe for review.

## DISCUSSION

### I. Plaintiff's Motion for Reconsideration (Dkt. No. 498)

#### a. Standard for Reconsideration

The Court's prior Order did not dispose of all of Plaintiff's claims against Columbia County. Under Federal Rule of Civil Procedure 54(b),

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).[2] This rule gives district courts discretion to reconsider interlocutory orders. See Herman v. Hartford Life & Acc. Ins. Co., 508 F. App'x 923, 927 n.1 (11th Cir. 2013) (citing McCoy v. Macon Water Auth., 966 F. Supp. 1209, 1222 (M.D. Ga. 1997)).

By its terms, Rule 54(b) does not impose any guidance or limits on the Court's power to reconsider an interlocutory

---

[2] In moving for reconsideration, Plaintiff relies primarily on Rule 54(b), which allows district courts to revise interlocutory judgments before a final judgment on all claims is entered in a case. Dkt. No. 498, p. 1. Plaintiff also mentions Rule 59(e) as a possible source of authority for the court to reconsider its Order. Id. at p. 2, n.1. Under Rule 59(e), "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Plaintiff's motion for reconsideration was not filed within 28 days of the Court's Order, and thus would be untimely if construed as a Rule 59(e) motion. Nevertheless, because the Court's Order adjudicated "fewer than all the claims" before it, reconsideration is appropriate under Rule 54(b). Fed. R. Civ. P. 54(b); see also Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla., No. 97-721-CIV, 189 F.R.D. 480, 492 (M.D. Fla. 1999) (noting that a motion to reconsider an interlocutory order is appropriate under Rule 54(b) even if a similar motion would be untimely under Rule 59(e)).

order. Other courts in the Eleventh Circuit have identified three grounds for reconsideration pursuant to Rule 59(e): "(1) the availability of new evidence; (2) an intervening change in controlling law; and (3) the need to correct clear error or prevent manifest injustice." Smith v. Augusta-Richmond Cnty., No. CV 110-126, 2012 WL 1355575, at *2 (S.D. Ga. Apr. 18, 2012). The Eleventh Circuit Court of Appeals has also recognized that "a change in controlling law is one of the core reasons for filing and granting a motion for reconsideration" under Rule 54(b). See Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1151-52 (11th Cir. 2011) (citations omitted).

"[R]econsideration of a previous order is 'an extraordinary remedy, to be employed sparingly.'" Augusta-Richmond Cnty., 2012 WL 1355575, at *1 (quoting Williams v. Cruise Ships Catering & Serv. Int'l, N.V., 320 F. Supp. 2d 1347, 1358 (S.D. Fla. 2004)). "A movant must 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" Id. (quoting Cover v. Wal-Mart Stores, Inc., 148 F.R.D 294, 294 (M.D. Fla. 1993)). Additionally, "[m]otions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." Id. at *2 (quoting Lockard v. Equifax, Inc., 163 F.3d 1259, 1267 (11th Cir. 1998)).

AO 72A
(Rev. 8/82)

### b. The EPA's New Rule Is Not Retroactively Applicable in This Case

The Court's Order dismissed Counts 2 and 3 of Plaintiff's Complaint, which alleged violations of the CWA against Defendants, because Plaintiff failed to produce evidence from which a jury could find that Willow Lake and its tributaries were "waters of the United States" subject to the CWA. Order at pp. 66-67. In so holding, the Court relied on the then-applicable "significant nexus" test first announced by Justice Kennedy in his concurrence in Rapanos v. United States, 547 U.S. 715, 779 (2006) (Kennedy, J., concurring), and later adopted by the Eleventh Circuit Court of Appeals in United States v. Robison, 505 F.3d 1208, 1221-22 (11th Cir. 2007). See Order at pp. 57-58.

In seeking reconsideration, Plaintiff argues that the "significant nexus" test is no longer the controlling law in this case, and has been superseded by the EPA's "New Rule" on determining jurisdictional waters under the CWA. The New Rule was published in the Federal Register on June 29, 2015, and became "effective" on August 28, 2015. According to Plaintiff, pursuant to the New Rule, "Jones Creek, Willow Lake, and their tributaries are all jurisdictional waters pursuant to the category for tributaries in the definition." Dkt. No. 498, p. 2.

The pertinent part of the New Rule states:

(1) For purposes of the Clean Water Act, 33 U.S.C. 1251 et seq. and its implementing regulations, subject to the exclusions in paragraph (o)(2) of this section, the term "waters of the United States" means:

    (i) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

    (ii) All interstate waters, including interstate wetlands;

    (iii) The territorial seas;

    (iv) All impoundments of waters otherwise identified as waters of the United States under this section;

    (v) All tributaries, as defined in paragraph (o)(3)(iii) of this section, of waters identified in paragraphs (o)(1)(i) through (iii) of this section;

    (vi) All waters adjacent to a water identified in paragraphs (o)(1)(i) through (v) of this section, including wetlands, ponds, lakes, oxbows, impoundments, and similar waters;

    (vii) All waters in paragraphs (o)(1)(vii)(A) through (E) of this section where they are determined, on a case-specific basis, to have a significant nexus to a water identified in paragraphs (o)(1)(i) through (iii) of this section. . . .

Clean Water Rule: Definition of "Waters of the United States", 80 Fed. Reg. 37,054-01, § 230.3(o)(1) (June 29, 2015) (to be codified at 40 C.F.R. pt. 230). Plaintiff specifically relies on the New Rule's definition for "tributary," which states:

>     The terms tributary and tributaries each mean a water
>     that contributes flow, either directly or through
>     another water (including an impoundment identified in
>     paragraph (o)(1)(iv) of this section), to a water
>     identified in paragraphs (o)(1)(i) through (iii) of
>     this section that is characterized by the presence of
>     the physical indicators of a bed and banks and an
>     ordinary high water mark. These physical indicators
>     demonstrate there is volume, frequency, and duration
>     of flow sufficient to create a bed and banks and an
>     ordinary high water mark, and thus to qualify as a
>     tributary. A tributary can be a natural, man-altered,
>     or man-made water and includes waters such as rivers,
>     streams, canals, and ditches not excluded under
>     paragraph (o)(2) of this section. A water that
>     otherwise qualifies as a tributary under this
>     definition does not lose its status as a tributary if,
>     for any length, there are one or more constructed
>     breaks (such as bridges, culverts, pipes, or dams), or
>     one or more natural breaks (such as wetlands along the
>     run of a stream, debris piles, boulder fields, or a
>     stream that flows underground) so long as a bed and
>     banks and an ordinary high water mark can be
>     identified upstream of the break. A water that
>     otherwise qualifies as a tributary under this
>     definition does not lose its status as a tributary if
>     it contributes flow through a water of the United
>     States that does not meet the definition of tributary
>     or through a non-jurisdictional water to a water
>     identified in paragraphs (o)(1)(i) through (iii) of
>     this section.

Id. at § 230.3(o)(3)(iii).

Plaintiff argues that Jones Creek, Willow Lake, and their tributaries at issue in this case fall under the definitions of "waters of the United States" and "tributaries" enumerated in the New Rule, and thus satisfy the jurisdictional waters element for their CWA claims. Particularly, Plaintiff points out that the "Court acknowledged that [contested waters] S1, S2, S3, and Jones Creek are tributaries" and recognized that Willow Lake was

formed by "damming and impounding Jones Creek." Dkt. No. 498, pp. 4-5 (citing Order at p. 3). Plaintiff also argues that various expert witnesses, on behalf of both the Plaintiff and Defendants, have described the contested waters as "tributaries." See Dkt. No. 498, p. 5.

Additionally, Plaintiff argues that evidence in the record satisfies the New Rule's "tributary" definition by establishing that some of the contested waters have the requisite "high water mark." To reach this conclusion, Plaintiff relies on the New Rule's definition of "high water mark," § 230.3(o)(3)(vi)[3], as well as the Georgia Environmental Protection Division's definition for "stream bank," which is determined, in part, by identifying the line of "wrested vegetation" in a stream. Ga. R. & Regs. § 391-3-7-.01(y).[4]

Finally, Plaintiff suggests that FEMA flood zone maps that have been entered into the record identify each of the contested waters as "tributaries." These maps, Plaintiff argues, also "mark the baseline water flow of the stream, and indicate the

---

[3] "The term ordinary high water mark means that line on the shore established by the fluctuations of water and indicated by physical characteristics such as a clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas." Clean Water Rule: Definition of "Waters of the United States", 80 Fed. Reg. 37,054-01, § 230.3(o)(3)(vi) (June 29, 2015) (to be codified at 40 C.F.R. pt. 230).

[4] "'Stream Bank' means the confining cut of a stream channel and is usually identified as the point where the normal stream flow has wrested the vegetation. . . ." Ga. R. & Regs. § 391-3-7-.01(y).

zones of possible flooding—or, in other words, the ordinary high water mark." Dkt. No. 498, p. 6.

By promulgating the New Rule, the EPA has made clear that it intends to define what constitutes "waters of the United States" for purposes of the CWA. What is less clear, however, is whether the EPA's New Rule should apply to alleged violations that occurred before the New Rule was effective. Initially, JCI was silent on the issue of the retroactive effect of a new administrative rule. Dkt. No. 498. Following Defendants' arguments that the New Rule did not apply retroactively, see generally dkt. nos. 500, 501, JCI then contended that the New Rule is binding on this Court and its application is not retroactive because: (1) the historical rule contains the same categorical jurisdiction for the waters at issue here as is provided by the New Rule; (2) Rapanos never invalidated the historical rule; (3) Robison improperly applied the significant nexus test; and (4) Defendants did not rely on a prior jurisdictional determination to its detriment. See generally Dkt. Nos. 507, 508. Case law on the retroactivity of administrative rules, along with the terms of the New Rule itself, suggest that the New Rule should not be applied retroactively in this case.

Courts have long held that retroactive interpretation of statues is disfavored.

> By virtue of the inherent repugnance of *ex post factó* imposition of civil liabilities, it is not surprising that the Supreme Court's teaching in this area is, upon analysis, decidedly unfriendly to statutory interpretations that would effect a latter-day burdening of a completed act—lawful at the time it was done—with retroactive liability.

Ralis v. RFE/RL, Inc., 770 F.2d 1121, 1127 (D.C. Cir. 1985) (citing Union Pac. Ry. v. Laramie Stock Yards Co., 231 U.S. 190, 199 (1913) ("[T]he first rule of construction is that legislation must be considered as addressed to the future, not the past. . . . [A] retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms and the manifest intention of the legislature.'")). The presumption against retroactivity applies to administrative rules as well: "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988);[5] see also Sierra Club v. TVA, 430 F.3d 1337, 1351 (11th Cir. 2005) ("Retroactive application of

---

[5] The Supreme Court in Bowen went on to hold that "[b]y the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." Bowen, 488 U.S. at 208. Plaintiff here has addressed the New Rule's retroactive application generally, but has failed to show where the CWA expressly grants the EPA authority to issue retroactive administrative rules such as the New Rule defining "waters of the United States." But even if Congress has granted that authority to the EPA, the New Rule by its terms does not provide for retroactive application in this case. Thus, this Court's analysis will rest on the language of the New Rule alone, and the Court need not look to the CWA to see if the EPA actually has retroactive rulemaking authority in this specific context.

11

administrative rules is highly disfavored, and they will not be construed to have retroactive effect unless their language requires this result") (quotations omitted).

Here, Plaintiff has not shown that the New Rule's language requires it to have retroactive effect in this particular case. In fact, at least for purposes of the enacting agencies' own jurisdictional determinations made before the New Rule's effective date, "the agencies' actions are governed by the rule in effect at the time the agency issues a jurisdictional determination or permit authorization, not the date of a permit application request for authorization, or request for a judicial determination." 80 Fed. Reg. at 37,074. Thus, the EPA does not consider the New Rule to be retroactive for some of its own jurisdictional determinations. Additionally, the fact of an effective date suggests that the New Rule is not intended to be applied retroactively. "There is no point in specifying an effective date if a provision is to be applied retroactively." Sierra Club, 430 F.3d at 1351 (concluding that an administrative evidentiary rule does not apply retroactively because the inclusion of an effective date suggests otherwise). Thus, Plaintiff has not pointed to any language in the New Rule expressly requiring retroactive application, and the text of the New Rule generally suggests that it should not be applied retroactively.

AO 72A
(Rev. 8/82)

Moreover, the Court finds JCI's remaining arguments unpersuasive. First, JCI's argument that the New Rule is simply a restatement of existing regulations held inapplicable in Robison negates its prior contention that the New Rule constitutes an intervening change in controlling law. See Dkt. No. 507, p. 1 ("the New Rule's categorical jurisdiction of tributaries and impoundments is binding on this court, thus the New Rule constitutes an intervention in the controlling law."). Even if the New Rule is simply a restatement of existing regulations, JCI cannot successfully argue, pursuant to Fed. R. Civ. P. 59(e), that the New Rule constitutes an intervening change of law. The basis for JCI's Motion for Reconsideration would still fail.

If the New Rule constitutes a change of law, it is clear, for the reasons set forth above, that the New Rule does not apply retroactively. Although JCI cites to Arkema Inc. v. E.P.A., 618 F.3d 1, 7 (D.C. Cir. 2010), for support, Arkema supports Defendants' arguments. Id. (citing Nat'l Mining Ass'n v. U.S. Dep't of Interior, 177 F.3d 1, 8 (D.C. Cir. 1999) (explaining where a rule merely narrows "a range of possible interpretations" to a single "precise interpretation," it may change the legal landscape in a way that is impermissibly retroactive.)). Here, applying the New Rule in the instant matter would create liability and impose duties upon Defendants

AO 72A
(Rev. 8/82)

for actions that occurred prior to the effective date of the New Rule and that this Court already determined did not violate the CWA.[6]

Second, there is nothing to suggest that Robison is not controlling precedent in the Eleventh Circuit or that the Eleventh Circuit misapplied Rapanos by applying a significant nexus test to a tributary. See, e.g., Dkt. No. 507, pp. 8-12; Dkt. No. 508, pp. 7-12. Indeed, JCI's request that this Court credit its argument that Robison incorrectly applied the significant nexus test contradicts its earlier position that Robison controls the case at hand. See Dkt. No. 436-2, p. 10 n. 4 ("Robison invoked the significant nexus test, and now all determinations of water of the United States under the CWA in the Eleventh Circuit must be made pursuant to it.").

Finally, Defendants follow their retroactivity arguments with an onslaught of other reasons the New Rule does not justify reconsideration in this case: the record evidence contains no actual evidence of a "high water mark" in the contested waters; the New Rule is not entitled to Chevron deference; the New Rule is currently being challenged under the Administrative Procedures Act in four separate lawsuits brought by at least

---

[6] As this Court has noted, the New Rule does not apply retroactively in this case. Although JCI argues that whether a rule applies retroactively requires a "judgment [that] is informed by considerations of notice, reliance and settled expectations," dkt. no. 507, p. 12; dkt. no. 508, p. 12, it is clear that applying the New Rule here would make Defendants liable for past conduct. Given the presumption against retroactivity, JCI's final argument in support of its Motion for Reconsideration is unpersuasive.

AO 72A
(Rev. 8/82)

twenty-seven states; and the New Rule faces challenges from both the House of Representatives and the Senate, and thus may never become controlling law. Whether or not these arguments have merit, the text of the New Rule and binding precedent regarding the retroactivity of administrative rules are alone enough for the Court to hold that Plaintiff has failed to meet its burden of showing "facts or law of a strongly convincing nature" to induce the Court to revise its prior ruling.[7] See Augusta-Richmond Cnty., 2012 WL 1355575, at *1.

### c. Plaintiff Cannot Raise New Legal Theories as to Why CSXT Is a "State Actor" in a Motion for Reconsideration

In its Order, the Court dismissed Plaintiff's federal takings claim against Defendant CSXT because Plaintiff had not shown that CSXT was a state actor. Order at p. 37. Plaintiff's theory for the federal takings claim (Count 11) was that Defendant CSXT's track construction upstream of Willow Lake caused flooding and an accumulation of sediment in Willow Lake, and thus amounted to a taking under the Constitution that was actionable under 42 U.S.C. § 1983. Section 1983 claims typically only apply to state actors or certain private entities acting in a public capacity. The Court noted that a private party can only

---

[7] This holding should not be construed as a pronouncement that the New Rule generally is not retroactively applicable. However, Plaintiff's failure to satisfy its heightened burden to carry a motion for reconsideration compels the holding that the New Rule is not retroactively applicable to the discharges and waters at issue in this particular case.

be treated as a state actor for § 1983 purposes if one of the following conditions is met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise" ("nexus/joint action test").

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (editorial marks removed) (quoting NBC, Inc. v. Comms. Workers of Am., 860 F.2d 1022, 1026-27 (11th Cir. 1988)). The Court then conducted the "state actor" analysis using only the "nexus/joint action test," because that was the only legal theory Plaintiff had proffered in arguing that Defendant CSXT was a state actor.

Now, Plaintiff wishes the Court to reconsider this analysis by considering whether Defendant CSXT is a state actor pursuant to the "public function test"—a test that Plaintiff failed to argue or ask the Court to consider during summary judgment briefing. But motions for reconsideration "should not be used to raise legal arguments which could and should have been made before the judgment was issued." Augusta-Richmond Cnty., 2012 WL 1355575 at *2 (quoting Lockard v. Equifax, Inc., 163 F.3d 1259, 1267 (11th Cir. 1998)). Plaintiff could and should have raised

AO 72A
(Rev. 8/82)

the public function theory earlier, and the Court will not consider it at this late juncture.[8]

Plaintiff has failed to show a compelling reason for the Court to reconsider its prior holding, and its Motion for Reconsideration (Dkt. No. 498) is therefore **DENIED**.

**II. Plaintiff's Motion to Stay the Proceedings (Dkt. No. 499)**

Plaintiff also filed a Motion to Stay the Proceedings alternatively to its Motion for Reconsideration. Dkt. No. 499. Plaintiff argues that, if the Court is not inclined to apply the EPA's New Rule for defining "waters of the United States" at this time because that Rule is not yet effective, the Court should stay the case until the Rule becomes effective. Id. at pp. 1-3.

A stay in this case would be inappropriate for the same reasons discussed in Part I.b supra: effective or otherwise, the New Rule is not retroactively applicable in this case. The controlling law in this case did not change on August 28, 2015, and there is no reason for the Court to stay the case until

---

[8] If the Court were to entertain Plaintiff's request for it to consider the "state actor" theory it failed to argue during summary judgment briefing, it would note that the three "state actor" tests (along with others) are not necessarily discrete and subject to successive application. The Supreme Court has queried "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound" state-action analysis. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982); see also NBC, 860 F.2d at 1026 (noting the same). In the end, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961). The Court has sifted the facts and weighed the circumstances once already—it need not do so again.

then. Plaintiff's Motion to Stay the Proceedings (Dkt. No. 499) is therefore **DENIED**.

### CONCLUSION

Plaintiff has not shown that the EPA's New Rule defining "waters of the United States" applies to this case either today or when it became effective on August 28, 2015. Nor has Plaintiff shown a compelling reason for the Court to redo the state-action analysis as to Defendant CSXT with a test Plaintiff failed to raise in its summary judgment briefing. Therefore, Plaintiff's Motion for Reconsideration (Dkt. No. 498) and its Motion to Stay the Proceedings (Dkt. No. 499) are both **DENIED**.

**SO ORDERED**, this 12TH day of February, 2016.

/s/ Lisa Godbey Wood
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA